The Most Reverend Charles A. SALATKA, as Archbishop of the Archdiocese of Oklahoma City, and his successors in office; and the Most Reverend Eusebius J. Beltran, as Bishop of the Diocese of Tulsa, and his successors in office, Petitioners,

v.

The OKLAHOMA ALCOHOLIC BEVERAGE CONTROL BOARD and the Oklahoma Tax Commission, Respondents.

No. 54279.

Supreme Court of Oklahoma.

March 11, 1980.

Robert H. Mitchell, Oklahoma City, and T. Austin Gavin, Tulsa, for petitioners.

Jan Eric Cartwright, Atty. Gen. of Oklahoma, Manville T. Buford, Duane N. Rasmussen, Asst. Attys. Gen., Oklahoma City, for respondents.

Thomas G. Ferguson, Jr., Oklahoma City, for respondent Oklahoma Tax Commission.

WILLIAMS, Justice.

Petitioners have filed an "Application To Assume Original Jurisdiction, For Immediate Stay, and Petition for Writ of Prohibition". They allege that respondents are acting pursuant to opinions issued by the Attorney General[1] which hold the "import, sale and purchase by churches" "of sacramental wine" is subject to regulation as an alcoholic beverage. They say enforcement of this interpretation, unless restrained, will require petitioners to purchase their sacramental wine from licensed Oklahoma retail liquor stores rather than from their own approved sources of supply. Petitioners allege that as a result they are unable to replenish their supplies of suitable sacramental wine and have asked that we take immediate action before the stock on hand

1. Official Attorney General's Opinion (No. 78–248) dated October 19, 1978; Official Attorney General's Opinion (No. 79–192) dated July 20, 1979.

becomes exhausted. This Court has assumed original jurisdiction and ordered that the effectiveness and enforcement of the subject Attorney General's opinions be temporarily stayed.

Petitioners assert in their application and petition that "sacramental wine is required by the church to be unique from common wines; its manufacture and importation require very close scrutiny by the church. Normal marketing practices do not provide this scrutiny."

Respondents, represented in this matter by the Attorney General, in their "Response to Application to Assume Original Jurisdiction And Petition For Writ of Prohibition" "acknowledge that the Court, in a proper case, may exercise jurisdiction, including the issuance of writs of prohibition extending to the ABC Board", and "do not resist the Court's assumption of jurisdiction in the exercise of its discretion".

However, respondents do assert that the petition in this matter raises questions of fact. They indicate they desire "some sort of evidentiary hearing" as to why the Church cannot purchase such wine through the normal distribution channels. Respondents state that they adopt the conclusions reached in Attorney General's Opinions No. 78–248 and No. 79–192 [2], and reiterate that the transfer of sacramental wine should be regulated as an alcoholic beverage. Respondents deny that their position restricts or impairs petitioner's religious liberty.

Respondents contend that the Constitution of Oklahoma in Article 27, Section 3 prescribes a distribution process for alcoholic beverages, including sacramental wine. That section in pertinent part provides:

§ 3. The Legislature shall enact laws providing for the strict regulation, control, licensing, and taxation of the manufacture, sale, distribution, possession, and transportation of alcoholic beverage, consistent with the provisions of this Amendment.[3]

We observe that in order for this constitutional section to apply to the acquisition by petitioners of the sacramental wine used by them in their worship, it first must be determined that such wine falls within the purview of the term "alcoholic beverage" as it appears in the section. We decline to make such a determination.

In *DeHasque v. Atchison T. & S. F. Ry. Co.*, 68 Okl. 183, 173 P. 73 (1918) a similar question was presented to this Court when the defendant in error, a railway company, refused to accept a shipment of wine tendered by plaintiff in error at Oklahoma City to be delivered to a Catholic priest in Guthrie, Oklahoma. An action brought on behalf of all members of the Roman Catholic faith sought to compel the railway company to accept like shipments and deliver them whenever tendered.

The parties in *DeHasque* agreed the wine involved was sacramental or altar wine, "manufactured and prepared in the particular manner prescribed by the church, and to be used for the sole purpose of conducting the religious service of that church . . ."

The shipment in question had been refused by the railway company for the reason that the laws of this State, then in effect, prohibited the sale of intoxicating liquor[4] as well as its delivery by common carrier.[5]

The sole question confronting the Court in *DeHasque* was whether the term "intoxicating liquor" as it appeared in the constitutional section and statutes prohibiting trafficking in the same, included wine used in worship by members of the Catholic Church.

---

2. See note 1, supra.

3. Article 27, Section 3 was adopted by popular vote in 1959. The remaining portions of this section provide a procedure for the distribution of alcoholic beverages.

4. Article 25 Oklahoma Constitution § 46, (Williams' Annotated Edition) "Prohibition Ordinance".

5. Chapter 186 S.L. 1917.

The Court, while acknowledging that "intoxicating liquor" was a term "sufficiently comprehensive to include every kind of fermented and intoxicating liquor" and that altar wine could be drunk in sufficient quantities to produce intoxication, nevertheless concluded that the "general term 'intoxicating liquors'" did not include wine used for sacramental purposes.

In the opinion this Court noted that the Sacrifice of the Mass is to all Catholics the supreme act of worship and adoration. It observed further that:

> Sacrifice of the Mass within the territorial limits now compromising the State of Oklahoma, and the use of this fermented altar wine, has been observed by the clergy of the Roman Catholic Church in the celebration of the Sacrifice of this Mass continuously since the time of Coronado, in the year 1540 . . . .

Turning to a determination of the scope of the term "intoxicating liquor" as it appeared in the constitutional provision there involved, the Court in *DeHasque* said, "The cardinal rule of constitutional and statutory construction is to arrive at the intention of the legislative body".

In paragraph five of the syllabus by the Court in *DeHasque*, it is stated, "no purpose of action against religion and religious institutions, when properly conducted, can be imputed to any legislative body" and in the body of the opinion following review of certain cases and legislation, the Court determined that the prevention of the use of wine in such a sacred service was not the object and purpose of the prohibition statutes.

Also considered important in *DeHasque* was "the construction placed upon a statute by officials charged with the duty of enforcing the statute, either at or near the time of the enactment . . . ." As to that point the Court said, "in no instance, so far as we know, has any officer charged with the enforcement of that act undertaken to apply it to the use of wine for sacramental purposes."

In the case at hand we find no indication that the traditional use of sacramental wine by the Catholic Church has changed over the 62 year period since this Court's decision . in *DeHasque*. Absent is any allegation that petitioners' use of this wine is for other than religious purposes.

Furthermore, upon application of those rules of construction used in *DeHasque* to the matter before us we are extremely doubtful that the people of Oklahoma who adopted Section 3, Art. 27 by popular vote in 1959 intended that the regulation and taxation of traffic in "alcoholic beverages" was meant to curtail or interfere with public worship in the slightest degree.

Moreover, there is nothing in the record to show but that for the first time in 20 years, officers in charge of enforcement of Section 3 and the Oklahoma Alcoholic Beverage Control Act have undertaken to apply it to the use of wine for sacramental purposes. They argue sacramental wine is within the purview of the constitutional use of the term "alcoholic beverage" for the purpose of regulation and taxation but was outside its purview when shipping the wine was sought to be prohibited in *DeHasque*.

We find no such distinction exists in either the Constitution or the *DeHasque* decision. Nor, on the basis of mere passage of time and the repeal of prohibition, are we inclined to now make such a distinction.

We conclude that the use of wine by petitioners solely for sacramental purposes in worship is not included in the general term "alcoholic beverage" as used in Section 3, Art. 27 of the Constitution.

In view of our decision, there appears to remain no reason to conduct an evidentiary hearing as has been requested. Likewise we are not called upon in this case to decide either the validity or effect of H.B. 1594, c. 73, Laws Thirty-Sixth Legislature, Second Regular Session, 1978, O.S.L.1978, p. 132.

Writ granted.

All Justices concur.